[Civ. No. 17551. Second Dist., Div. Three. Dec. 29, 1950.]

FRED REIF, Respondent, v. PAUL KARP, Appellant.

Henry O. Wackerbarth for Appellant.

Sylvan Y. Allen for Respondent.

WOOD (Parker), J.—In the complaint there are ten causes of action for money allegedly agreed to be paid for services rendered. In his answer defendant set forth three alleged counterclaims. It appears from respondent's (plaintiff's) brief that the parties stipulated that the third alleged counterclaim should be deemed a cross-complaint. The court found, among other things, that plaintiff had rendered services for defendant of the values alleged in the various causes of action in the complaint; and that defendant was entitled to a set-off as alleged in the counterclaims. Judgment was for plaintiff for $722. Defendant appeals from the judgment.

Appellant's contentions relate only to the issues presented by the cross-complaint. In the cross-complaint it was alleged as follows: That each of the parties is engaged in the business of manufacturing and selling handpainted silk neckties; on March 5, 1946, the parties entered into an agreement to purchase from the United States certain commodities consisting of used silk parachutes packed in wooden crates, upon a bid theretofore made by plaintiff (cross-defendant); plain-

tiff would have said parachutes delivered in said crates to such warehouse as may be mutually agreed upon by the parties; the parties would meet at said warehouse at a time mutually agreed upon and open the crates and divide equally said parachutes between them; the $3,000 which plaintiff had theretofore deposited with the government in connection with the bid should apply on the purchase price and defendant would advance the balance of the purchase price; each of the parties would pay one half of the expense incident to said purchase price and also one half of the expense of hauling the crates to said warehouse; thereafter the parties purchased from the United States 8,458 pounds of silk parachutes packed in wooden crates; in order to pay the balance of the purchase price, defendant advanced to plaintiff $11,632.34 and plaintiff thereupon paid to the United States the purchase price of all of said parachutes in the sum of $14,632.34; plaintiff failed to have said parachutes delivered to such warehouse as the parties may have mutually agreed upon, but caused the parachutes, contained in approximately 40 crates, to be delivered to his own place of business; plaintiff opened certain of said crates immediately upon their arrival at his place of business and in the absence of, and without the knowledge of, defendant, plaintiff removed the parachutes from the crates he had opened and caused certain of said parachutes to be removed from plaintiff's place of business, and plaintiff thereupon set aside the remaining crates for defendant; plaintiff failed to divide the parachutes equally between the parties, but on the contrary plaintiff set aside for delivery to defendant 20 crates containing 2,539 pounds of the parachutes and retaining for his own use 5,919 pounds of said parachutes; on March 11, 1946, defendant caused the 20 crates set aside for him by the plaintiff to be delivered to his place of business, believing that they contained one half of the silk parachutes; on March 14, 1946, the plaintiff remitted to defendant the sum of $4,561.34 out of the sum defendant had advanced to plaintiff on the purchase price of the parachutes; the 2,539 pounds of silk parachutes delivered to defendant are of the agreed value of $4,392.47, and the expenses incident to the purchase of the parachutes chargeable to plaintiff are $42.88; the defendant paid plaintiff $2,635.75 on the purchase price of one half of said parachutes and expenses in excess of the amount due plaintiff therefor; and the defendant is indebted to plaintiff in the sum of $570.67, leaving a net

amount due to defendant from plaintiff in the sum of $2,065.08.

Plaintiff and defendant had made separate bids on the parachutes. On March 5, 1946, they entered into a written agreement as follows:

"March 5, 1946.

"Mr. Paul Karp and Tycraft.

"On Bid B-32-46 Silk scraps only in San Diego was made by bid by Paul Karp, Emmarosa Studio and later on by Tycraft. On my request no award was given until now. To speed up delivery of merchandise we all agree to the following:

"Regardless of who of us will get the award of this merchandise we will equally divide in two parts and notify the Commanding Office of the U. S. Air Station of our decision personally. If none of us will get the award, and a resale authorized, then in this case the above called person will make a unit bid. That means that none of us will be entitled directly or indirectly to contact any one else to make a bid for him, and part with him or buy the merchandise from anybody who will get it but us.

"Each of us who will do anything against this agreement will pay to the other party a contribution of $5,000.

"It is further agreed that Paul Karp or Tycraft is to pay the difference between the deposit of $3,000 and the total amount of the bid.

Signed Maurice Rosenberg,
with Power of Attorney for Paul Karp whose signature will be substituted.

Fred Reif
Emmarosa Studio."

Plaintiff's bid was accepted, and the purchase price was paid in the manner alleged in the cross-complaint—plaintiff and defendant each paid one half of the purchase price and one half of the incidental expenses.

The trial court found that it was not true that plaintiff agreed to have the parachutes delivered to a warehouse to be mutually agreed upon; that it was not true that plaintiff failed to carry out certain terms of the agreement between the parties; that it was not true that plaintiff retained for his own use and benefit 5,919 pounds of parachute material; and that it was not true that the defendant paid plaintiff the sum of $2,635.75 in excess of the amount due plaintiff on account of the purchase price of one half of the parachutes.

Appellant (defendant) contends, in effect, that the findings are not supported by the evidence. He argues that plaintiff received the major portion of the valuable parachutes and a minor portion of the valueless cords or shrouds. In support of that argument, he refers to his testimony as follows: that he (defendant) received a total of 205 parachutes, and the plaintiff had sold 400 or 500 parachutes; that the total weight of the merchandise received by defendant was 4,062½ pounds, and he should have received 4,205 pounds; that only 2,779 pounds of the merchandise received by him were silk parachutes and the remainder of the merchandise was cords and flares; that on March 13, 1946, he received a call from plaintiff, regarding the arrival of the parachutes, and he picked the parachutes up that same day; that when he arrived at plaintiff's shop on that day he asked plaintiff why he had the parachutes delivered to plaintiff's place instead of having them delivered to the warehouse; that plaintiff replied, "They delivered it; that's all there is to it"; he (defendant) observed that about five of the boxes were partially opened, and he said, "These boxes seem to be open"; plaintiff replied, "I didn't open them. If you want them you can take them; if you don't want them you don't have to take them. That's the way they came from the warehouse"; then the boxes, which plaintiff had set aside for defendant, were taken to defendant's home and the small boxes were piled on top of the big boxes; he opened the top boxes first and used the silk in his business; about one month later he opened the five big boxes which contained cords and rayon flares.

Plaintiff testified (regarding defendant's assertion that plaintiff had sold 400 or 500 parachutes) that he had made purchase of parachutes other than the purchase here involved, and that he had purchased thousands of parachutes. He also testified that when the boxes involved herein arrived, he separated them by putting one "on the right side" and then one "on the left side" according to the net weight shown on the outside of the box; the boxes were in his back yard which is an open space; the boxes were not on his premises overnight; he did not remove any material of any kind from the boxes which were subsequently received by defendant; and he notified the defendant by telephone to come and get his boxes.

Plaintiff's son testified that the boxes of parachutes were delivered by Pacific Freight Lines in the morning of March 12, 1946; the truck came to the back of the store, and he and

"some fellows" took the boxes off the truck and put them in the yard; each box was marked with stencil lettering indicating net weight, gross weight and weight of the box; two of the men had cardboards on which they kept a tally of what we had; the net weight of a box was called off and the box was put on one side of the yard, and then the net weight of the next box taken off the truck was called and that box was put in another pile in order to make the weight division as even as possible; they kept records of the weight as they went along; no one opened and removed anything from the 20 boxes which defendant received—"those 20 boxes were not touched."

■ Whether or not there was an equal division of the parachutes was a question of fact for the determination of the trial court. The evidence was legally sufficient to support the findings.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.